## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

AMERICA L. SALAS-PEREZ,  :
                             :
         Plaintiff         :     No. 3:14-CV-2357
                             :
         vs.              :     (Judge Nealon)
                             :
CAROLYN W. COLVIN, Acting   :
Commissioner of Social Security,  :
                             :
         Defendant     :

## MEMORANDUM

On December 11, 2014, Plaintiff, America L. Salas-Perez, filed this instant appeal[1] under 42 U.S.C. § 405(g) for review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI")[2] under Titles II and XVI of the Social Security Act, 42 U.S.C. § 1461, et seq and 42 U.S.C. § 1381 et seq, respectively. (Doc. 1). The parties have fully briefed the appeal. For the reasons set forth below, the decision of the Commissioner denying Plaintiff's applications for DIB and SSI will be affirmed.

---

1. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D. Pa. Local Rule 83.40.1.

2. Supplemental security income is a needs-based program, and eligibility is not limited based on an applicant's date last insured.

## BACKGROUND

Plaintiff protectively filed[3] her applications for DIB and SSI on June 28, 2011, alleging disability beginning on February 16, 2011, due to Fibromyalgia, depression, anxiety, and "cholesterol." (Tr. 21, 212).[4] The claim was initially denied by the Bureau of Disability Determination ("BDD")[5] on December 19, 2011. (Tr. 21). On February 9, 2012, Plaintiff filed a written request for a hearing before an administrative law judge. (Tr. 21). An oral hearing was held on June 7, 2013, before administrative law judge Theodore Burock, ("ALJ"), at which Plaintiff and an impartial vocational expert, Brian Bierley, ("VE"), testified. (Tr. 21). On June 28, 2013, the ALJ issued a decision denying Plaintiff's claims because, as will be explained in more detail infra, Plaintiff was capable of performing light work with limitations. (Tr. 21-33).

On August 12, 2013, Plaintiff filed a request for review with the Appeals

---

3. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

4. References to "(Tr. _)" are to pages of the administrative record filed by Defendant as part of the Answer on June 5, 2015. (Doc. 10).

5. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.

Council. (Tr. 6). On October 17, 2014, the Appeals Council concluded that there was no basis upon which to grant Plaintiff's request for review. (Tr. 1-3). Thus, the ALJ's decision stood as the final decision of the Commissioner.

Plaintiff filed the instant complaint on December 11, 2014. (Doc. 1). On June 5, 2015, Defendant filed an answer and transcript from the SSA proceedings. (Docs. 9 and 10). Plaintiff filed a brief in support of her complaint on July 19, 2015. (Doc. 12). Defendant filed a brief in opposition on September 23, 2015. (Doc. 16). Plaintiff filed a reply brief on October 2, 2015. (Doc. 17).

Plaintiff was born in the United States on August 30, 1953, and at all times relevant to this matter was considered a "person of advanced age."[6] (Tr. 233). Plaintiff graduated from high school, but cannot communicate in English. (Tr. 211, 213). Her employment records indicate that she previously worked as a housekeeper and a housekeeping supervisor. (Tr. 221, 239). The records of the SSA reveal that Plaintiff had earnings in the years 1983 through 2011. (203). Her annual earnings range from a low of no earnings in 1989, 1992, and 1993 to a high of twenty-one thousand four hundred ninety-three dollars and forty-four cents

_____

6. "Person of advanced age. We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older)." See § 404.1568(d)(4). 20 C.F.R. §§ 404.1563(e).

3

($21,493.44) in 2008.  (Tr. 203).  Her total earnings during those twenty-eight (28)

years were two hundred thirty-eight thousand three hundred forty-nine dollars and

twenty-five cents ($238,349.25).  (Tr. 203).

In a document entitled "Function Report - Adult" filed with the SSA on

March 13, 2011,  Plaintiff indicated that she lived in a house with family.  (Tr.

248).  From the time she woke up to the time she went to bed, Plaintiff would

wake up slowly, walk down to the kitchen where she would sit for thirty (30)

minutes due to fatigue and disorientation, exercise, watch television, cook in the

evening, and then go for a walk.  (Tr. 249).  She took care of her daughter, and

prepared "complete" meals five (5) times a day, seven (7) days a week.  (Tr. 249).

She had some difficulty with personal care due to fatigue, pain, and forgetfulness.

(Tr. 249).  When asked to check items which her "illnesses, injuries, or conditions

affect," Plaintiff did not check reaching, walking, talking, hearing, using hands, or

getting along with others.  (Tr. 253).  She was able to walk two (2) blocks before

needing to rest for three (3) to five (5) minutes.  (Tr. 253).

Regarding her concentration and memory, Plaintiff needed special

reminders to take care of her personal needs, take her medicine, and attend

appointments.  (Tr. 250, 252).  She could count change, but could not pay bills,

handle a savings account or use a checkbook because she would become confused

with what she was writing and counting. (Tr. 251, 252). She could pay attention for "a good while," she did not follow written or spoken instructions well, and she was able to finish what she started. (Tr. 254).

Socially, Plaintiff went outside "less than two times a day," but did not drive or go out alone because she would become confused. (Tr. 251). Her hobbies included sewing and reading. (Tr. 252). She had no interest in engaging in social activities, but rather preferred to be alone. (Tr. 253). She did not have problems getting along with family, friends, neighbors, or others. (Tr. 254).

Plaintiff also filled out a Supplemental Function Questionnaire for fatigue and pain. (Tr. 228-230). Her fatigue began three (3) years earlier, was not associated with the onset of an illness, increased since it began, was worse in the afternoon, occurred daily and constantly, and was relieved by medicine and relaxation. (Tr. 256). Her pain was located all over her body, was sharp and constant, had intensified since it began, and was worsened by bending, walking, climbing stairs, getting out of the shower, and temperature extremes. (Tr. 257-258). Plaintiff took Tramadol to relieve her pain, which worked for about two (2) to three (3) hours, and took hot showers, but did not attend physical therapy. (Tr. 258).

At her hearing on June 7, 2013, Plaintiff testified that she was disabled due

to Fibromyalgia, which caused her to experience pain all over her body from head to toe, with medicine helping "a little bit." (Tr. 44). Physical activity made her pain worse. (Tr. 45). Other impairments were depression and anxiety related to the pain the Fibromyalgia caused, with medications offering only some relief and causing side effects like insomnia. (Tr. 45-47). She also noted she suffered from vertigo that caused an inability to do anything, but medicine did help. (Tr. 51).

In terms of physical activity, Plaintiff testified that she was able to walk about two (2) blocks before needing to sit and rest for twenty (20) to twenty-five (25) minutes. (Tr. 47). She was able to stand for about five (5) minutes before needing to sit down. (Tr. 48). She testified that she was able to lift twenty (20) to twenty-five (25) pounds when questioned by the ALJ, but then when she was asked what she lifted at home on an average day, she responded that there were days that she did not lift anything. (Tr. 48, 51). The most comfortable position for her to be in was either sitting or lying down. (Tr. 50). She did not perform any household chores, and her grandchildren with whom she resided went to daycare, so she did not watch them. (Tr. 48). She was only able to sleep about two (2) hours at night. (Tr. 51).

## MEDICAL RECORDS

On April 26, 2011, Plaintiff presented to the Volunteers in Medicine Free

Clinic for headaches, insomnia, Fibromyalgia pain, anxiety, and depression. (Tr. 291). Her medications were listed as Remeron, Clonazepam, and Fluoxetine. (Tr. 291). She was assessed for Fibromyalgia, anxiety, and depression. (Tr. 291). It was recommended that she decrease and discontinue Prozac and Remeron, undergo a smoking cessation program, and take Tylenol PM, Benadryl for sleep, and Wellbutrin for depression. (Tr. 291).

On July 12, 2011, Plaintiff presented to the Volunteers in Medicine Free Clinic due to complaints of headaches, insomnia, knee buckling, and whole body pain. (Tr. 290-91). The clinician ordered an X-ray of Plaintiff's right knee, assessed Plaintiff for Fibromyalgia, and prescribed Tramadol for pain as needed and Cymbalta for the Figromyalbia. (Tr. 290). It was recommended that Plaintiff follow-up in two (2) months. (Tr. 290).

On August 4, 2011, a clinician at Greater Lawrence Family Health Center indicated that Plaintiff should "consult with a psychologist" if she was seeking disability due to depression. (Tr. 301).

On September 12, 2011, Plaintiff returned to the Free clinic for a Fibromyalgia follow-up appointment. (Tr. 330). She reported difficulty sleeping, that her body felt tired, and that the Tramadol was working for pain. (Tr. 330). She was instructed to continue her medications, and was prescribed Trazadone for

7

sleep. (Tr. 330).

On September 28, 2011, R.C. Schwartz, M.D., performed a consultative physical examination of Plaintiff. (Tr. 308-311). Regarding Plaintiff's Fibromyalgia, it was noted that Plaintiff had been treated recently with Cymbalta, and that she had constant pain in her head, neck, upper and lower back, arms, and feet. The medicine helped sometimes, but "at other times they [were] not much help." (Tr. 308). Regarding her depression, she had never been hospitalized for it, had suicidal thoughts without any attempts, and was on multiple medications, including Fluoxetine and Sertraline. (Tr. 308). Regarding her anxiety, Plaintiff noted that she felt nervous most of the time, had difficulty focusing and spending time with people, felt overwhelmed a "good deal of the time," and was on multiple medications to treat it. (Tr. 309). Regarding her cholesterol, she was not on medication and treated it by "eating the correct foods." (Tr. 309). Her medications included Fluoxetine, Clonazepam, Tramadol, Hydroxyzine, Nabumetone, Sertraline, Trazadone, and Cymbalta. (Tr. 309). Plaintiff's self-reported symptoms included: swelling in her legs and hands; shortness of breath at rest and exertion; loss of appetite; nausea and abdominal pain; frequent headaches and migraines two (2) to three (3) times a week that could last for days; joint pain; and muscle pain and numbness. (Tr. 309-310). Her physical

examination revealed the following: an inability to sit still; tender focal points bilaterally in her upper neck; 5/5 strength bilaterally in the upper and lower extremities; 2/4 reflexes bilaterally in the upper and lower extremities; no limitations in her ability to sit, bend, stand, walk, lift, or grab; normal range of motion, gait, and neurological status; and a nontender spine. (Tr. 310). It was noted Plaintiff did not use a device for weight bearing activities or ambulation. (Tr. 310). Dr. Schwartz diagnosed Plaintiff with Fibromyalgia, depression, anxiety, and cholesterol issues. (Tr. 311). Although Plaintiff complained of lower back and knee arthritis, Dr. Schwartz did not appreciate any significant tenderness upon palpation to her back or manipulation of her knees. (Tr. 311). In a medical source statement, Dr. Schwartz indicated Plaintiff could: (1) frequently lift and carry twenty-five (25) pounds; (2) had no sitting, standing, or walking limitations; (3) could frequently engage in postural movements; and (4) should avoid temperature extremes. (Tr. 306-07).

On November 1, 2011, Louis Laguna, Ph.D., performed a consultative psychological evaluation. (Tr. 316-21). Plaintiff noted that she stopped working due to pain from Fibromyalgia and depression. (Tr. 317). Plaintiff reported that she spent a typical day in her apartment smoking and pacing. (Tr. 318). Dr. Laguna noted that Plaintiff could cook, clean, shop, and take care of her own

9

personal care, health, and hygiene, but needed to "pace herself" due to pain.  (Tr. 320).  Dr. Laguna felt that Plaintiff could competently manage funds.  (Tr. 320). Plaintiff's mental status examination revealed that Plaintiff: had low self-esteem; was cooperative; had normal speech; had poor eye contact; had depression symptoms, including difficulty sleeping, suicidal ideations, and feelings of hopelessness; denied hallucination and delusions; felt constantly worried; had intact productivity, continuity, and language; had intact recent, recent past, and remote memory; had good judgment; and had good insight.  (Tr. 320).  Based on his evaluation, Dr. Laguna diagnosed Dysthymic Disorder and Generalized Anxiety Disorder.  (Tr. 320).  In a medical source statement, Dr. Laguna opined that Plaintiff had no limitations in her abilities to understand, remember, and carry out instructions; slight limitations in interacting appropriately with the public, supervisors, and co-workers; and moderate limitations in responding appropriately to work pressures and to changes in a routine work setting.  (Tr. 313).  In support of his opinion, Dr. Laguna noted Plaintiff "reported significant pain that creates a sense of hopelessness."  (Tr. 313).

On November 15, 2011, Plaintiff returned to the Free Clinic complaining of tooth pain.  (Tr. 329).  She was "doing well on present medications for fibromyalgia."  (Tr. 329).  The provider assessed a tooth abscess and

"fibromyalgia – stable." (Tr. 329).

On March 7, 2012, Plaintiff presented to Jon Keller, D.O. due to complaints of Fibromyalgia, depression, anxiety, insomnia, and poor circulation in her feet, and a with a request for medication refills. (Tr. 361, 434). Dr. Keller's physical examination revealed good pulses and capillary refill in her feet, and no signs of ulceration. (Tr. 437). Plaintiff had a good gait and balance, intact cranial nerves, good upper and lower extremity strength, and responded properly to verbal conversation. (Tr. 437). Plaintiff requested that Dr. Keller complete Social Security disability forms based on her medical problems, to which he responded, "I referred her instead to psychiatry." (Tr. 434).

On April 13, 2012, Plaintiff had a follow-up appointment with Dr. Keller. She reported experiencing dizziness and vomiting. (Tr. 371, 429). Dr. Keller noted that a CT scan and a neurological examination were normal except for "very minimal" horizontal nystagmus to the right side. (Tr. 374, 377, 430, 432). Her physical exam was normal, and it was noted that Plaintiff had a normal gait, grossly normal cranial nerves II through XII, and equal upper and lower strength bilaterally. (Tr. 377). Dr. Keller prescribed Ciprofloxacin and Meclizine. (Tr. 371, 430).

On April 27, 2012, Plaintiff had a follow-up with Dr. Keller. (Tr. 368). She

11

noted that she continued to experience motion-induced vertigo despite medication. (Tr. 362, 364).  Dr. Keller's physical examination showed Plaintiff was ambulatory with no focal deficits except for nystagmus to the left horizontally; her upper and lower extremity strength was equal bilaterally; she comprehended and responded normally through an interpreter; and her mental status, affect, and judgment were normal. (Tr. 366).

On May 19, 2012, Plaintiff presented to the emergency room at Good Samaritan Hospital with complaints of a stiff neck and neck pain.  (Tr. 400-408). She was diagnosed with a neck spasm and released the same day.  (Tr. 403).

On October 3, 2012, Plaintiff followed up with Dr. Keller after a hospital visit for nausea, abdominal pain, and vomiting.   (Tr. 444-48). She continued to have diarrhea and abdominal pain.  (Tr. 444, 446).  Plaintiff stated that she "babysits her grandchildren but is not able to do so right now." (Tr. 444).  On physical examination, Plaintiff had abdominal tenderness and hyperactive bowel sounds, but she had equal upper and lower extremity strength, had normal gait and balance, understood and responded normally to verbal communication, had a grossly normal mental status, had a normal affect, and had normal judgment.  (Tr. 447-448).

On November 16, 2012, Plaintiff followed up with Dr. Keller after another hospital emergency room visit for abdominal pain. (Tr. 439, 452). On physical examination, Plaintiff had no neck abnormalities; no extremity swelling; no focal deficits; intact cranial nerves; intact upper and lower extremity strength; a normal gait and balance; and no difficulty understanding and responding normally to verbal commands. (Tr. 442-43). Dr. Keller referred Plaintiff for a psychiatry consultation. (Tr. 441).

On April 2, 2013, Plaintiff followed up with Dr. Keller, reporting that she had been experiencing dizziness, memory problems, and knee pain. (Tr. 412). She also requested medication refills, but reported side effects from Prozac. (Tr. 410). Dr. Keller ordered a CT scan; bilateral knee x-rays; and an ENT consultation. (Tr. 412).

On April 9, 2013, Plaintiff underwent a CT scan of her head. (Tr. 449). Plaintiff's CT scan was normal. (Tr. 449).

On May 23, 2013, Plaintiff had an appointment with Dr. Keller so that he could complete Social Security disability forms. (Tr. 482, 484). During the visit, Plaintiff reported experiencing mild back pain, memory impairments, anxiety, depression, and knee buckling. (Tr. 482). Dr. Keller first completed a Mental Impairment Questionnaire, in which he opined that Plaintiff had a "limited

but satisfactory" ability to: understand, remember, and carry out short and simple

instructions; make simple work-related decisions; maintain attention for two-hour

segments; work in proximity to others; and ask simple questions or request

assistance. (Tr. 465). He also opined that she had between a "limited but

satisfactory" and a "seriously limited, but not precluded" ability to perform at a

consistent pace without an unreasonable number and length of rest periods. (Tr.

465). Lastly, Dr. Keller opined that Plaintiff had a "seriously limited, but not

precluded" ability to: accept instructions and respond appropriately to supervisory

criticism; get along with co-workers without unduly distracting them; respond

appropriately to changes in a work setting; and deal with normal work stress. (Tr.

465). Dr. Keller then rated Plaintiff's degree of limitation in the four (4) broad

functional domains, opining that Plaintiff: had moderate difficulties in maintaining

concentration, persistence, or pace; had no difficulty or mild difficulty in activities

of daily living and in maintaining social functioning; and had no episodes of

decompensation. (Tr. 467). Dr. Keller estimated that Plaintiff's impairments

would cause her to miss work more than four (4) days per month. (Tr. 468). Dr.

Keller also completed a Physical Residual Functional Capacity Questionnaire.

(Tr. 469-73). He opined that: Plaintiff's symptoms would "constantly" interfere

with the level of attention and concentration needed to perform simple work tasks;

14

that she was incapable of even "low stress" jobs; that she could sit for forty-five (45) minutes at a time; that she could stand for fifteen (15) minutes at a time; that she could sit, stand, and walk for less than two (2) hours in an eight (8) hour workday; that she must walk around every fifteen (15) minutes for five (5) minutes; that she required a sit/stand option at will; that she would need unscheduled breaks; that she could occasionally lift ten (10) pounds and rarely lift more than that; and that she would likely be absent from work more than four (4) days per month. (Tr. 472). Lastly, Dr. Keller completed a Fibromyalgia Questionnaire. (Tr. 474-78). On that form, Dr. Keller added that Plaintiff could never engage in postural movements, and could rarely look down, turn her head, look up, or hold her head in a static position. (Tr. 477).

## **STANDARD OF REVIEW**

When considering a social security appeal, the court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Mason v. Shalala, 994 F.2d

1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

Factual findings which are supported by substantial evidence must be upheld. 42

U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where

the ALJ's findings of fact are supported by substantial evidence, we are bound by

those findings, even if we would have decided the factual inquiry differently.");

Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the

Secretary must be accepted as conclusive by a reviewing court if supported by

substantial evidence."); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Keefe

v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Martin v. Sullivan, 894 F.2d 1520,

1529 & 1529 n.11 (11th Cir. 1990).

　　　Substantial evidence "does not mean a large or considerable amount of

evidence, but 'rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565

(1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938));

Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008);

Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has

been described as more than a mere scintilla of evidence but less than a

preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual

record, substantial evidence may be "something less than the weight of the

16

evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-07. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

## SEQUENTIAL EVALUATION PROCESS

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

17

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Further,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step process in evaluating disability and claims for disability insurance benefits. See 20 C.F.R. § 404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four, the Commissioner must

18

determine the claimant's residual functional capacity. Id. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled. Id. "The claimant bears the ultimate burden of establishing steps one through four." Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

"At step five, the burden of proof shifts to the Social Security Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and residual functional capacity. " Poulos, 474 F.3d at 92, citing Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004).

**ALJ DECISION**

Initially, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through the date last insured of December 31, 2015. (Tr. 23). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity from her alleged onset date of February 16, 2011. (Tr. 23).

At step two, the ALJ determined that Plaintiff suffered from the severe[7] combination of impairments of the following: "fibromyalgia, obesity/ overweight, depression, anxiety, vertigo, and arthritis of the knees (20 C.F.R. 404.1520(c) and 416.920(c))." (Tr. 23).

At step three of the sequential evaluation process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925

_____

7. An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

and 416.926).  (Tr. 24-25).

At step four, the ALJ determined that Plaintiff had the RFC to perform light

work with limitations.  (Tr. 25-32).  Specifically, the ALJ stated the following:

> After careful consideration of the entire record, the undersigned
> finds that [Plaintiff] has the [RFC] to perform light work as
> defined in 20 CFR 404.1567(b) and 416.967(b) except that
> [Plaintiff] is limited to routine, repetitive tasks; she is limited to
> tolerating only occasional changes in the work setting; she is
> precluded from climbing ladders, ropes, and scaffolds; and she
> is precluded from working around unprotected heights or
> dangerous equipment.

(Tr. 25).

At step five of the sequential evaluation process, the ALJ determined that

Plaintiff "is capable of performing past relevant work as a housekeeper.  This

work does not require the performance of work-related activities precluded by

[her] [RFC] (20 C.F.R. 404.1565 and 416.965)."  (Tr. 32).

Thus, the ALJ concluded that Plaintiff was not under a disability as defined

in the Social Security Act at any time between February 16, 2011, the alleged

onset date, and the date of the ALJ's decision.  (Tr. 32).

**DISCUSSION**

On appeal, Plaintiff asserts the following arguments: (1) substantial

evidence does not support the ALJ's evaluation of the opinion evidence; (2) the

21

ALJ's finding that Plaintiff can perform light work and return to past relevant work as a housekeeper is not based on substantial evidence; (3) substantial evidence does not support the ALJ's evaluation of Plaintiff's Fibromyalgia; and (4) the ALJ erred in failing to properly consider Plaintiff's symptoms of Fibromyalgia, including pain, poor sleep, and fatigue, on her ability to work. (Doc. 12, pp. 1-2, 12-29) . Defendant disputes these contentions. (Doc. 16, pp. 17-27).

### 1.  Opinion Evidence

Plaintiff argues that substantial evidence does not support the ALJ's evaluation of the opinion evidence. (Doc. 12, pp. 15-21). More specifically, Plaintiff argues that the ALJ erroneously afforded limited weight to the opinion of Dr. Keller, Plaintiff's treating physician, because: (1) the ALJ "failed to point out any inconsistent evidence to support his argument;" (2) the ALJ's reasoning that Dr. Keller's opinion was not supported by and was inconsistent with the record due to the benign findings was unsupported; (3) the ALJ provided no support for his reasoning that Dr. Keller's opinion was excessive when viewed in conjunction with the limited degree of treatment required; (4) the ALJ failed to consider the factors set forth in 20 C.F.R. § 416.927( c); and (5) if the ALJ were unsure of the basis of Dr. Keller's opinion, he had a duty to recontact him in accordance with

Social Security Regulation ("SSR") 96-5p . (Doc. 12, pp. 10-16).

The preference for the treating physician's opinion has been recognized by the Third Circuit Court of Appeals and by all of the federal circuits. See, e.g., Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). This is especially true when the treating physician's opinion "reflects expert judgment based on a continuing observation of the patient's condition over a prolonged time." Morales, 225 F.3d at 317; Plummer, 186 F.3d at 429; see also 20 CFR § 416.927(d)(2)(i)(1999) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Pursuant to 20 C.F.R. §§ 404.1527( c)(2), 416.927( c)(2) and SSR 96-2p, a treating physician's opinion is entitled to controlling weight only when the following three (3) criteria are satisfied: (1) the opinion must be a "medical opinion;" (2) the ALJ must find that the medical opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (3) even if well-supported, the medical opinion must be consistent with other substantial evidence in the individual's medical records and case file.

However, when the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit

in his or her analysis, but "cannot reject evidence for no reason or for the wrong

reason." <u>Morales</u>, 225 F.3d 316-18.  It is within the ALJ's authority to determine

which medical opinions he rejects and accepts, and the weight to be given to each

opinion.  20 C.F.R. § 416.927.  The ALJ is permitted to give great weight to a

medical expert's opinion if the assessment is well-supported by the medical

evidence of record.  <u>See</u> <u>Sassone v. Comm'r of Soc. Sec.</u>, 165 F. App'x 954, 961

(3d Cir. 2006) (holding that there was substantial evidence to support the ALJ's

RFC determination that the plaintiff could perform light work, even though this

determination was based largely on the opinion of one medical expert, because the

medical expert's opinion was supported by the medical evidence of record);

<u>Chandler v. Commissioner of Social Security</u>, 667 F.3d 356, 361 (3d Cir. 2011)

("Although treating and examining physician opinions often deserve more weight

than the opinions of doctors who review records . . . '[t]he law is clear . . . that the

opinion of a treating physician does not bing the ALJ on the issue of functional

capacity' . . . state agent opinions merit significant considerations as well.") (citing

<u>Brown v. Astrue</u>, 649, F.3d 193, 197 n.2 (3d Cir. 2011)); Baker <u>v. Astrue</u>, 2008

U.S. Dist. LEXIS 62258 (E.D. Pa. Aug. 13, 2008).  In order to determine the

weight to assign to a medical opinion that is not entitled to controlling weight, the

ALJ may consider: (1) the examining relationship; (2) the length, nature, and

24

extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) any medical specialization. <u>See</u> 20 C.F.R. 20 C.F.R. §§ 404.1527(c), 616.927(c).

Regardless, the ALJ has the duty to adequately explain the evidence that he rejects or to which he affords lesser weight. <u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 505-06 (3d Cir. 2009). "The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review." <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 119-20 (3d Cir. 2000); <u>see</u> <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d Cir. 2004) (holding that while an administrate law judge is required to set forth the reasons for his or her decision, and that a bare conclusory statement is insufficient to meet this requirement, an ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis. Rather, the function of <u>Burnett</u> is to ensure that there is sufficient development of the record and explanation of finding to permit meaningful review."); <u>see also</u> <u>Diaz v. Commissioner of Social Security</u>, 577 F.3d 500, 504 (3d Cir. 2009) ("In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient. The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion

sufficient to enable meaningful judicial review.  Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505, n.3 (3d Cir. 2004).  The ALJ, of course, need not employ particular 'magic' words: 'Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.' Jones, 364 F.3d at 505.").

In reading the decision as a whole and in reviewing the evidence, this Court finds that substantial evidence upholds the weight the ALJ assigned to the medical opinion evidence because the ALJ provided sufficient and supported  explanations as to why he was assigning limited weight to the opinion of Dr. Keller and considered the aforementioned factors of 20 C.F.R. §§ 404.1527(c), 416.927(c) in his analysis.  (Tr. 25-32).  As discussed by the ALJ throughout his opinion, Dr. Keller's opinion was inconsistent with and not supported by the objective and clinical findings.  (Tr. 25-32).  With regards to Plaintiff's mental health impairments, the ALJ explained that this was an area of medicine not within Dr. Keller's area of expertise, and that the ALJ therefore was permitted to give more weight to the opinion of a speciliast about medical issues related to that physician's area of specialty rather than that of a physician who is not a specialist. (Tr. 32); See 20 C.F.R. § 404.1527(c)(5), 416.927 (c)(5).  The ALJ further reasoned that the mental health restrictions opined by Dr. Keller were inconsistent

with Dr. Keller's own findings. (Tr. 32).

With regards to Plaintiff's physical impairments, the ALJ reasoned that the following opinion of Dr. Keller was excessive when viewed in conjunction with the record as a whole: (1) that Plaintiff would constantly be in pain or experience other symptoms severe enough to interfere with the level of attention and concentration needed to perform even simple work tasks; (2) that Plaintiff would be limited to sitting and standing/ walking less than two (2) hours per day; and (3) that Plaintiff would be absent from work more than four (4) days per month. (Tr. 32). The ALJ supported this opinion throughout his analysis by presenting inconsistent objective medical evidence. (Tr. 25-32).  As noted by the ALJ in his opinion, Dr. Keller's examinations revealed that Plaintiff had 5/5 strength in her lower and upper extremities, that she had a normal gait and balance, that she had no trigger points or spasms, and that her medications were working. (Tr. 30-32, 334, 366, 376-377, 437, 442-443, 447-448).  The ALJ also discussed Dr. Schwartz's opinion that was in opposition to that of Dr. Keller and that was supported by the record, and ultimately gave Dr. Schwartz's opinion significant weight because of its consistency with the record. (Tr. 31).

Lastly, the ALJ was under no duty to recontact Dr. Keller.  20 C.F.R. § 416.912(e)(1) provides that a medical source will be recontacted for purposes of

clarification "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." However, the language in Section 416.912(e)(1) is preceded by the following qualification: recontact will proceed if "the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled." This is an important prerequisite. See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he requirement for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability."). In the case at hand, evidence from the numerous examinations performed by Dr. Keller was adequate to allow the ALJ to make a determination as to Plaintiff's disability, and thus the ALJ was under no obligation to recontact Dr. Keller for any clarification of his opinion.

It is noted that the ALJ is the ultimate decision maker as to Plaintiff's RFC, and because he has complied with the regulations and precedent and sufficiently provided an explanation for giving Dr. Keller's opinion limited weight, the ALJ did not err in the weight assigned to this opinion or the remainder of the opinion evidence. As such, the ALJ's analysis of the opinion evidence in the RFC

28

determination is supported by substantial evidence and will not be disturbed on appeal.

### 2.   __Past Relevant Work Determination__

Plaintiff next asserts that the ALJ's finding that Plaintiff can perform light work and return to past relevant work as a housekeeper is not based on substantial evidence because the ALJ did not comply with the requirements of SSR 82-62, which requires that, in finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. (Doc. 12, pp. 16-18); See SSR 82-62.

In determining whether a claimant can return to past relevant work, the ALJ may consider several sources, including the claimant's subjective description of past relevant work as it was actually performed, the Dictionary of Occupational Titles, and vocational expert testimony to determine how that past relevant work is actually and generally performed in the national economy. See 20 C.F.R. §§ 404.1560(b)(2), 416.1560(b)(2). SSR 82-62 states: "The claimant is the primary source for vocational documentation, and statements by the claimant regarding

29

past work are generally sufficient for determining the skill level, exertional demands, and nonexertional demands of such work."   Additionally, a vocational expert or specialist can offer relevant evidence within his or her knowledge or expertise concerning the physical and mental demands of a claimant's past relevant work, either as actually or generally performed in the national economy. See 20 C.F.R. §§ 404.1560(b)(2), 416.1560(b)(2).  Lastly, it is well-established that a vocational expert's testimony in response to a hypothetical question that fairly sets forth every credibly established limitation constitutes substantial evidence of non-disability.  Plummer v. Apfel, 186 F.3d 422, 432 (3d Cir. 1999).

In arriving at the determination that Plaintiff could perform past relevant work, the ALJ stated the following:

> In comparing [Plaintiff's] [RFC] with the physical and mental demands of this work, the undersigned finds that [Plaintiff] is able to perform it as actually and generally performed.  The impartial [VE] identified [Plaintiff's] past relevant work as a housekeeper as light exertionally and unskilled (SVP 2) in nature. [Plaintiff] retains the [RFC] for unskilled light work activity.  Accordingly, she is capable of performing her past relevant work as a housekeeper as actually and as generally performed.  The undersigned notes that [Plaintiff] can speak and understand English but cannot read English.  Despite this, she was able to do the job of a housekeeper in the past.  If she were capable of doing the job then while being illiterate in English, she is capable of doing that same job now when considering that factor.

(Tr. 32).  Thus, the ALJ based his determination that Plaintiff could perform past

relevant work as a housekeeper on the testimony provided by the VE at the hearing, at which the VE described Plaintiff's past work as a housekeeper and as a housekeeping supervisor as light and unskilled. (Tr. 59). At the oral hearing, the VE confirmed, when questioned, that an individual with Plaintiff's vocational profile and aforementioned RFC could perform Plaintiff's past relevant work as a housekeeper. (Tr. 61-62). As such, the ALJ complied with SSR 82-62 because he made a finding of fact as to Plaintiff's RFC at step four, a finding of fact as to the physical and mental demands of the past job/occupation of housekeeper (ie. that Plaintiff was capable of performing light and unskilled work, which fit the description of a housekeeper, per the testimony of the VE), and a finding of fact that Plaintiff's RFC would permit a return to her past job or occupation. (Tr. 32). As such, the ALJ's finding that Plaintiff can return to past relevant work as a housekeeper is supported by substantial evidence and will not be disturbed on appeal.

**3.    ALJ's Assessment of Plaintiff's Fibromyalgia and Credibility Regarding Her Fibromyalgia Symptoms**

Initially, Plaintiff asserts that the ALJ did not comply with SSR 12-2p[8],

---

8. Under SSR 12-2p, an individual has a medically determinable impairment of Fibromyalgia if they have: (1) a history of widespread pain in all quadrants of the body and axial skeletal pain that has persisted for at least three (3) months; (2) at least eleven (11) tender positive points on physical examination, which must be

Evaluation of Fibromyalgia.  However, contrary to Plaintiff's argument, upon

review of the decision, it is clear that the ALJ complied with SSR 12-2p because:

(1) the ALJ found Plaintiff's Fibromyalgia to be a severe impairment at step two;

(2) the evidence did not contain any objective evidence that Plaintiff had at least

eleven (11) positive tender points upon physical examination, which is necessary

for a diagnosis of Fibromyalgia in the first place; and (3) all of Plaintiff's

limitations resulting from Fibromyalgia have been accounted for in the RFC.  (Tr.

23, 26-29).  Notably, the ALJ highlighted an appointment Plaintiff had with Dr.

Keller in November 2011, during which Plaintiff stated her Fibromyalgia was

stable and her exam revealed no trigger points, spasm, tenderness, or limited

motion.  (Tr. 30, 329, 376-377).

Furthermore, the ALJ discussed in detail Plaintiff's Fibromyalgia

symptoms, including pain, sleep disturbance, stiffness, headaches, and fatigue.

(Tr. 25-32).  As part of step four of the sequential evaluation process, once an ALJ

concludes that there is a medical impairment that could reasonably cause the

alleged symptoms, "he or she must evaluate the intensity and persistence of the

pain or symptom, and the extent to which it affects the individual's ability to

---

found bilaterally and above and below the waist; and (3) evidence that other
disorders that cause the symptoms and signs were excluded.  SSR 12-2p.

work." Hartranft, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529(c)).  This "requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id.  In evaluating the intensity and persistence of a claimant's symptoms, an ALJ should consider (1) the claimant's history; (2) medical signs and laboratory findings; (3) medical opinions; and (4) statements from the claimant, treating and non-treating sources, and other persons about how the claimant's symptoms affect him/her. See 20 C.F.R. § 404.1529.  Importantly, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  1996 SSR LEXIS 4 (1996); 20 C.F.R. § 404.1529(c)(2).

"Generally, 'an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'" Fell v. Astrue, 2013 U.S. Dist. LEXIS 167100, *29 (M.D. Pa. 2013) (Conaboy, J.) (quoting Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997)); Frazier v. Apfel, 2000 U.S. Dist. LEXIS 3105 (E.D. Pa. Mar. 6, 2000).  "'The credibility determinations of an administrative judge are virtually unreviewable on

appeal." Hoyman v. Colvin, 606 Fed. App'x 678, 681 (3d Cir. 2015) (citing

Beiber v. Dep't of the Army, 287 F.3d 1358, 1364 (Fed. Cir. 2002)).

Social Security Ruling 96-7p gives the following instructions in evaluating

the credibility of the claimant's statements:

> In general, the extent to which an individual's statements about
> symptoms can be relied upon as probative evidence in
> determining whether the individual is disabled depends on the
> credibility of the statements. In basic terms, the credibility of
> an individual's statements about pain or other symptoms and
> their functional effects is the degree to which the statements
> can be believed and accepted as true. When evaluating the
> credibility of an individual's statements, the adjudicator must
> consider the entire case record and give specific reasons for the
> weight given to the individual's statements.

SSR 96-7p. "In particular, an ALJ should consider the following factors: (1) the

plaintiff's daily activities; (2) the duration, frequency and intensity of the

plaintiff's symptoms; (3) precipitating and aggravating factors; (4) the type,

dosage, effectiveness, and side effects of any medication taken to alleviate the

symptoms; (5) treatment, other than medication for relief of the symptoms; (6) any

measures the plaintiff uses or has used to relieve the symptoms; (7) the plaintiff's

prior work record; and (8) the plaintiff's demeanor during the hearing." Jury v.

Colvin, 2014 U.S. Dist. LEXIS 33067, *33 (M.D. Pa. 2014) (Conner, J.) (citing 20

C.F.R. § 404.1529(c)(3)).

In assessing Plaintiff's credibility in this case, the ALJ stated:

> After careful consideration of the evidence, the undersigned
> finds that [Plaintiff's] medically determinable impairments
> could reasonably be expected to cause the alleged symptoms;
> however, the statements of [Plaintiff] and [her daughter],
> concerning the intensity, persistence and limiting effects of
> these symptoms are not entirely credible for the reasons
> explained in this decision.
>
> Allegations concerning symptoms and limitations are
> undermined by the relatively benign clinical and laboratory
> findings and the limited degree of treatment required.

(Tr. 29). The ALJ discussed the medical record highlights of benign findings in

support of his credibility determination regarding Plaintiff's symptoms, including

the following: (1) Plaintiff did not require hospitalization; (2) Plaintiff's strength

was 5/5 bilaterally in the upper and lower extremities; (3) Plaintiff's reflexes were

a 2/4 bilaterally in the upper and lower extremities; (4) Plaintiff was found to have

a normal range of motion and neurological status; (5) Plaintiff did not use a device

for weight bearing activities or ambulation; (6) Plaintiff had normal posture and

gait; (7) Plaintiff had intact productivity, language, and continuity; (8) Plaintiff

had intact recent, recent past, and remote memory; (9) Plaintiff had good insight

and judgment; (10) Plaintiff reported her Fibromyalgia to be stable in November

2011; (11) Plaintiff had no trigger points, spasms, tenderness, or edema at a May

2013 appointment; and (14) at this May 2013 appointment, Plaintiff was

ambulatory without focal deficits and had a grossly normal mental status and judgment.  (Tr. 29-30).

In terms of Plaintiff's activities of daily living, the ALJ noted that Plaintiff testified that she was able: to cook five (5) meals a day, seven (7) days a week; exercise; sew; shop; watch television; and perform personal care activities.  (Tr. 28, 31).  Thus, the ALJ considered the aforementioned Jury factors in his analysis, including daily activities, treatment and measures used to relieve symptoms, and the duration, frequency and intensity of Plaintiff's symptoms, which is evident in the resulting restrictive RFC finding.

Upon review of the record and the ALJ's credibility determination, it is determined that there is substantial evidence to support the ALJ's assessment of Plaintiff's Fibromyalgia and his credibility finding regarding Plaintiff's symptoms. The ALJ is correct that there were enough inconsistencies in the record regarding Plaintiff's self-reported limitations that weakened her credibility.  Furthermore, the ALJ did not find Plaintiff to be not credible, but only not entirely credible. (Tr. 15).  The restrictive RFC finding is evidence that ALJ found Plaintiff credible to some degree, albeit not completely, as the ALJ concluded Plaintiff could perform only a limited range of light work based, in part, on her subjective complaints.  (Tr. 25-32).  As such, because the ALJ's analysis of Plaintiff's

Fibromyalgia and the related symptoms that led to the ALJ's credibility determination are supported by substantial evidence, the ALJ's decision will not be disturbed on appeal based on Plaintiff's last two (2) remaining assertions.

## CONCLUSION

Based upon a thorough review of the evidence of record, it is determined that the Commissioner's decision is supported by substantial evidence.  Therefore, pursuant to 42 U.S.C. § 405(g), the appeal will be denied and the decision of the Commissioner will be affirmed.

A separate Order will be issued.

**Date**: June 30, 2016

/s/ **William J. Nealon**
**United States District Judge**

37